UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DANIEL GERTON,

        Plaintiff,

    v.

FORTISS, LLC, et al.,

        Defendants.

Case No. 15-cv-04805-TEH

**ORDER GRANTING IN PART MOTION TO COMPEL ARBITRATION**

This matter came before the Court on February 1, 2016 for a hearing on Defendants' motion to compel arbitration. After carefully considering the parties' written and oral arguments, the Court hereby GRANTS IN PART Defendants' motion and DISMISSES the matter without prejudice.

**BACKGROUND**

Plaintiff Daniel Gerton ("Plaintiff") is a third party propositional player of various casino games. Compl. at 4 (Docket No. 1). In February 2013, Plaintiff applied for employment with Defendant Knighted Ventures ("Knighted Ventures"), a third party propositional player service provider, which provides human staffing to gaming establishments. *Id.* at 5. Knighted Ventures is designated as the direct employer of the players. *Id.* Defendant Fortiss ("Fortiss") provides human resources to Knighted Ventures and other third party propositional staffing companies. *Id.*

Sometime in February 2013,[1] Plaintiff signed Fortiss' "Employee Release Authorization," authorizing Fortiss to procure a background/credit report on Plaintiff in connection with Plaintiff's prospective employment with Knighted Ventures. Ex. A to

---

[1] At oral argument, Defendants' counsel stated that while the exact date is unclear, Plaintiff signed the Employee Release Authorization on either February 23 or February 25, 2013.

1   Compl. Plaintiff's underlying claims[2] are based on this Employee Release Authorization.

2   On February 25, Plaintiff signed a stand-alone "Agreement to Mediate and Arbitrate

3   Disputes," (the "Arbitration Agreement") that stated:

> Knighted Ventures, LLC. and I hereby agree that any issue between me and Knighted Ventures, LLC. or any of its employees, agents, officers, directors or affiliates (the "Knighted Ventures, LLC. Parties"), which relates to my employment with Knighted Ventures, LLC., including, but not limited to any claims of discrimination, harassment, retaliation, statutory claims, tort claims or contract claims (the "Claims"), must be resolved exclusively through (i) mediation, and if that fails to resolve the dispute, (ii) binding arbitration, according to the terms set forth below.

10   Ex. A to Grewohl Decl. at 1 (Docket No. 11-2). The Arbitration Agreement went on to

11   provide, among other terms, the process for either party's invocation of arbitration

12   according to the American Arbitration Association ("AAA") Rules. *Id.*

13   The Arbitration Agreement also set out (1) the process for choosing a neutral; (2)

14   the venue; (3) payment of arbitration-specific costs and fees; (4) available remedies; and

15   (5) details of the arbitrator's written decision and award. *Id.* at 1-2. After these five items,

16   a paragraph in bold and capital letters stated that the employee understands that s/he is

17   giving up rights (including a jury trial), followed by a blank line and the words

18   "employee's initials." *Id. at 2.* Plaintiff initialed the line. *Id.*

19   Next, the Arbitration Agreement stated the following:

> I understand that I have the right to commence arbitration against Knighted Ventures, LLC. in the form of a class action or representative action, in which case I would act as a representative plaintiff and attempt to assert claims on behalf of a number of my fellow employees. I further understand that Knighted Ventures, LLC. requests that I give up my right to proceed against Knighted Ventures, LLC. in a class action or representative action capacity, or participate voluntarily in any way. I understand that I [*sic*] if I do not choose to accept Knighted Ventures, LLC.'s offer to waive my class action rights in exchange, I will retain those rights and will not suffer any retaliation from Knighted Ventures, LLC. for having made that choice.

---

[2] Plaintiff alleges violations of various consumer protection and credit reporting statutes based on the format and contents of the Employee Release Authorization.

2

**I AGREE THAT I WILL NOT VOLUNTARILY ASSERT AGAINST KNIGHTED VENTURES, LLC. PARTIES ANY CLAIMS OTHER THAN MY OWN CLAIMS. I FURTHER AGREE THAT, EXCEPT AS OTHERWISE REQUIRED BY LAW, I WILL NOT COOPERATE, AID OR ASSIST ANY OTHER PERSON OR ENTITY IN ASSERTING CLAIMS OF ANY KIND OR NATURE AGAINST THE KNIGHTED VENTURES, LLC. PARTIES, OR ANY OF THEM, INCLUDING THAT I WILL NOT SERVE AS A REPRESENTATIVE PLAINTIFF OR A PRIVATE ATTORNEY GENERAL IN ANY CLAIM, ACTION OR CHARGE AGAINST KNIGHTED VENTURES, LLC. PARTIES, OR ANY OF THEM.**

\_\_\_\_ (Employee's initials)

Ex. A to Grewohl Decl. at 2. Plaintiff initialed the line. *Id.* For purposes of this Order, the Court will refer to these two paragraphs as the "class action waiver."

Plaintiff filed a class action complaint in this Court on October 19, 2015. (Docket No. 1.) Before the court is Defendants' motion to compel arbitration, filed on December 15, 2015. (Docket No. 12.)

**LEGAL STANDARD**

The Federal Arbitration Act ("FAA") applies to arbitration agreements in any contract affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); 9 U.S.C. § 2. Section 4 of the FAA ensures that "private agreements to arbitrate are enforced according to their terms." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). Accordingly, a party to an arbitration agreement can petition a United States District Court for an order directing that "arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Additionally, the FAA contains a mandatory stay provision. *Id.* § 3.

Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2. "[T]he FAA's purpose is to give preference (instead of mere equality) to arbitration provisions." *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013).

3

Nonetheless, arbitration "is a matter of consent, not coercion." *Volt*, 489 U.S. at 479. In accordance with this principle, the Supreme Court has held that parties may agree to limit the issues subject to arbitration, and to arbitrate according to specific rules. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628 (1985); *Volt*, 489 U.S. at 479.

"The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Pinnacle Museum Tower Assn. v. Pinnacle Mkt Dev., LLC*, 55 Cal. 4th 223, 236 (2012). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (internal citations omitted). A court must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," and "doubts should be resolved in favor of coverage." *AT&T Tech, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

**DISCUSSION**

In ruling on a motion to compel arbitration, a district court's inquiry is two-fold. The Court decides "(1) whether a valid agreement to arbitrate exists; and if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000). "If the response is affirmative on both counts, the [FAA] requires the court to enforce the arbitration in accordance with its terms." *Chiron,* 207 F.3d at 1131.

**I.     The Agreement Is Valid and Enforceable**

Arbitration clauses may be invalidated "based on the same grounds as exist in law or in equity for revocation of a contract," such as fraud, duress, or unconscionability. 9

4

1  U.S.C. § 2. Thus, to assess the validity of an arbitration clause, the Court applies state law;
2  here, California state law applies. "Under California law, a contractual clause is
3  unenforceable if it is both procedurally and substantively unconscionable." *Davis v.*
4  *O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007). Procedural unconscionability
5  focuses on "oppression or surprise due to unequal bargaining power;" substantive
6  unconscionability focuses on "overly harsh or one-sided results." *Armendariz v. Found.*
7  *Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (internal quotation marks and
8  citations omitted). Both elements must be present, but courts employ a "sliding scale,"
9  whereby a stronger showing on one may make up for a weaker showing on the other. *Id.*
10 Plaintiff, as the party resisting arbitration, bears the burden of proving unconscionability.
11 *Pinnacle,* 55 Cal. 4th at 236.

12 Defendants contend that there is, at most, minimal procedural unconscionability,
13 due to the fact that the Arbitration Agreement was presented to Plaintiff as a mandatory
14 condition of employment. Defs.' Mot. at 6 (Docket No. 11). *See Serpa v. Cal. Surety*
15 *Investigations, Inc.*, 215 Cal. App. 4th 695, 704 (2013). Defendants also point out the
16 substantive provisions of the Arbitration Agreement that are clearly *not* unconscionable:
17 the neutral arbitrator; the availability of unlimited statutory remedies; that there is adequate
18 discovery; the written arbitration award; that Defendants will pay any costs unique to
19 arbitration; and that the parties' obligations are bilateral. Defs.' Mot. at 7-8.

20 Plaintiff contends that the Arbitration Agreement is a contract of adhesion because
21 the class action waiver is "confusing," and while it purports to allow employees to
22 preserve their class action rights, there is no way to actually preserve the rights.[3] Pl.'s

---

[3] Plaintiff also argues that the provision is unconscionable because it bars the ability to bring a Private Attorney General Act ("PAGA") representative claim. Pl.'s Opp'n at 12-14. Plaintiff is correct that PAGA waivers are unenforceable. *Iskanian v. CLS Transp. Los Angeles, LLC, 59 Cal. 4th 348, 359-60 (2014).* However, Plaintiff does not have standing to challenge the PAGA waiver provision because the statute of limitations has expired on Plaintiff's PAGA claim. *See Arellano v. T-Mobile USA, Inc.*, No. 10-CV-5663, 2011 WL 1362165, at *5 (N.D. Cal. Apr. 11, 2011) (court could not decide whether provision of an arbitration agreement, if applied to plaintiff, would be unconscionable, because plaintiff was not injured by the mere inclusion of the provision in the agreement).

5

1  Opp'n at 10. Plaintiff contends that the "lack of an effective opt out provision provides
2  proof of procedural unconscionability;" thus, the Arbitration Agreement is invalid. *Id.* at
3  11. Plaintiff further contends that the issue of enforceability of class action waivers in
4  consumer credit transaction arbitration agreements "must be reconsidered in light of recent
5  regulatory and congressional action." *Id.* at 15.

6  As discussed below, the Court finds that the Arbitration Agreement is valid and
7  enforceable, despite containing an unconscionable provision, because the unconscionable
8  provision can be severed from the Arbitration Agreement.

**A.     The class action waiver is unconscionable.**

The California Supreme Court has held that the FAA preempts California law disfavoring enforcement of a class action waiver in employment arbitration agreements. *Iskanian*, 59 Cal. 4th at 359-60. Thus, class action waivers do not outright invalidate arbitration agreements. The United States Supreme Court recently affirmed *Iskanian*, holding that class action waivers are enforceable under the FAA and cannot be invalidated on state law grounds inapplicable to any other contract. *DirecTV, Inc. v. Imburgia*, 136 S. Ct. 463 (2015). The Court cautioned that arbitration agreements must be interpreted consistently with ordinary rules of contract interpretation and cannot be subject to special consideration due to concerns invoked by waiver of class rights. *Id.* at 469-70.

Here, Plaintiff argues that the class action waiver is unconscionable, and thus makes the Arbitration Agreement unenforceable. Plaintiff relies heavily on *In re D.R. Horton, Inc.* ("*Horton I*"), an NLRB decision, which found that a class action waiver violated employees' right to engage in concerted activity under Section 7 of the National Labor Relations Act ("NLRA"), and struck down the arbitration agreement. 357 NLRB No. 184, 2012 WL 36274, at *7-10 (Jan. 3, 2012). The NLRB further found that such waivers run afoul of the Norris-LaGuardia Act of 1932, 29 U.S.C. § 101 *et seq.* ("Norris-LaGuardia"), which protects employees' concerted activities for purposes of collective bargaining. *Id.*

Plaintiff contends that *Horton I* exemplifies Congress' belief that class action waivers are unconscionable in the consumer and employee context; thus, the Court should

1  follow *Horton I* and accordingly find the Arbitration Agreement invalid.[4]  Pl.'s Opp'n at
2  15; *see Am. Express Co. v. Italian Colors Restaurant*, --- U.S. ---, 133 S.Ct. 2304, 2309
3  (2013) (arbitration clause unenforceable if "FAA's mandate has been overridden by a
4  contrary congressional command").

5  However, "the majority of federal courts to have considered *Horton I* have rejected
6  its reasoning." *Nanavati v. Adecco USA, Inc.*, 99 F. Supp. 3d 1072, 1077-79 (N.D. Cal.
7  2015); *Richards v. Ernst & Young, LLP*, 744 F.3d 1072, 1075 n.3 (9th Cir. 2013)
8  (surveying number of federal courts rejecting *Horton I*).  The Fifth Circuit partially
9  overruled Horton I, and sided with the weight of federal courts holding class action
10 waivers enforceable.  *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344, 359 (5th Cir. 2013)
11 ("*Horton II*").  Indeed, even the California Supreme Court rejected *Horton I* in *Iskanian*.
12 59 Cal. 4th 348, 367-74 (2014) ("We thus conclude . . . that sections 7 and 8 of the NLRA
13 do not represent a 'contrary congressional command' overriding the FAA's mandate.")
14 (citation omitted).

15 In *Johnmohammadi v. Bloomingdales, Inc.*, the Ninth Circuit held that where the
16 employee has the right to opt out of the arbitration agreement but chooses not to do so, the
17 employee may not claim a violation of Norris-LaGuardia or the NLRA.  755 F.3d at 1077.
18 The *Johnmohammadi* Court reasoned that the opt out provision meant the employer did
19 not require the employee to accept a class action waiver as a condition of employment;
20 thus, there was no coercion and the waiver was not unconscionable.  *Id*. at 1075-76; *see*
21 *also Nanavanti*, 99 F. Supp. 3d 1072 (upholding arbitration agreement where class action
22 waiver's opt out procedure involved requesting a form via email and submitting the form

---

[4] On January 25, 2016, Plaintiff filed a "Statement of Recent Decision" (Docket No. 22) to alert the Court of the recent decision in *Totten v. Kellogg Brown & Root, LLC*, No. 14-CV-1766, 2016 WL 316019 (C.D. Cal. Jan. 22, 2016).  While *Totten* contains an interesting discussion of class action waivers, public policy concerns with arbitration in the employment context, and authority interpreting *Horton I*, the arbitration agreement at issue in *Totten* (and also in *Horton I*) did not have an opt out provision; thus the facts are not analogous to this case.  The Court finds *Johnmohammadi v. Bloomingdales, Inc.*, 755 F.3d 1072, 1077 (9th Cir. 2014), to be more useful in its analysis, as the Ninth Circuit directly addressed opt out provisions in class action waivers.

1  within 30 days of signing the agreement); *Guadagno v. E\*Trade Bank*, 592 F. Supp. 2d

2  1263, 1270 (C.D. Cal. 2008) (employee can opt out by notifying employer in writing

3  within 60 days of receiving the agreement; thus, class action waiver not unconscionable).

4  However, even agreements containing opt out provisions may still be found

5  unconscionable if the opt out provision is "extremely onerous" or "largely illusory."

6  *Mohamed v. Uber Techs., Inc.*, 109 F. Supp. 3d 1185, 1205-06 (N.D. Cal. 2015) (opt out

7  provision was buried in contract and employees could only opt out by writing that was

8  hand-delivered or sent via overnight mail); *Gentry v. Superior Court*, 42 Cal. 4th 443, 472

9  (2007) (even with opt out provision, employees felt pressured to submit to arbitration for

10 fear of losing job). Courts consider whether there was a "meaningful opportunity" to opt

11 out. *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199-1200 (9th Cir. 2002); *but see*

12 *Circuit City Stores Inc. v. Mantor*, 335 F.3d 1101, 1106 (9th Cir. 2003) (no meaningful

13 opportunity to opt out when employers pressured employees to not opt out).

### 1. *There was no meaningful opportunity for Plaintiff to opt out of the class action waiver.*

Considering the class action waiver section of the Arbitration Agreement at issue here, the Court finds several areas of concern. First, in analyzing the language of the two paragraphs, it appears that the provision allows the employee to opt out of the class action waiver by simply not initialing the box under the waiver paragraph. However, even assuming that failing to initial the line would suffice to opt out, such a procedure for opting out is not described anywhere in the Arbitration Agreement. A simple sentence such as, "If you wish to opt out of this class action waiver, do not initial this line," may have sufficed.[5] Instead, without reading carefully and possessing enough experience to

---

[5] At oral argument, Plaintiff's counsel implied that there was no meaningful opportunity to opt out because Plaintiff was not given at least 30 days to review the class action waiver. It is true that in the majority of cases finding a meaningful opportunity to opt out of arbitration agreements, the agreements contained a procedure whereby an employee could opt out by mail or email within a specified period of time (usually 30 or 60 days). *See, e.g., Ahmed*, 283 F.3d at 1199. However, the Court declines to extend the authority so far as to *require* a 30 day waiting period. Instead, the Court notes that a 30 day waiting period would have weighed in favor of a meaningful opportunity to opt out, by giving Plaintiff

8

1 understand the language of the two paragraphs taken together, an employee would likely
2 skim over the class action waiver section, assuming it is another mandatory line to initial in
3 a "pre-hire package." Pl.'s Opp'n at 3.

4       In fact, the paragraph under which the employee would initial or refrain from
5 initialing does not contain the words "class action," "waiver" or "opt out" anywhere in its
6 90 words. While the paragraph is written in bold, capital letters, and is set apart from the
7 surrounding sections, the wording is extremely confusing and would take an exceptionally
8 careful reading to understand that initialing below this paragraph would constitute a waiver
9 of the rights recited in the paragraph above. *Cf. Velazquez v. Sears, Roebuck & Co.*, No.
10 13-CV-0680, 2013 WL 4525581, at *5 (S.D. Cal. Aug. 26, 2013) (agreement clearly
11 outlined steps for opting out; option to opt out was "not buried in fine print, but was
12 instead, clearly labeled") (citing *Kilgore v. KeyBank, Nat. Ass'n,* 718 F.3d 1052, 1059 (9th
13 Cir. 2013)) (internal marks omitted).

14       Perhaps most importantly, Knighted Ventures has demonstrated that it can draft a
15 clearer waiver of rights, by doing so in the immediately preceding paragraph, which begins
16 by stating: "I UNDERSTAND THAT BY SIGNING THIS AGREEMENT, I AM GIVING
17 UP SIGNIFICANT RIGHTS, INCLUDING BUT NOT LIMITED TO, THE RIGHT TO A
18 JURY TRIAL.[. . .]" Ex. A to Grewohl Decl. at 2. It is unclear to the Court why Knighted
19 Ventures did not reproduce this language in the class action waiver section, but instead
20 chose a convoluted and verbose alternative.

21       For these reasons, the Court finds that Plaintiff did not have a meaningful
22 opportunity to opt out of the class action waiver. The Arbitration Agreement's class action
23 waiver is therefore procedurally unconscionable because the inability to opt out of the
24 provision constitutes unfair surprise, and substantively unconscionable because the ensuing
25 waiver of Plaintiff's class action rights constitutes overly harsh results.

---

28 time to consider the waiver.

### B. The unconscionable class action waiver is severable from the Arbitration Agreement.

An unconscionable provision of an arbitration agreement may be severed to retain the remaining provisions. *Rent-A-Center, West, Inc., v. Jackson*, 561 U.S. 63, 71-72 (2010); *Davis*, 485 F.3d at 1084 (a court's finding that the agreement contains "flawed provisions" does not necessarily mean the entire agreement is unconscionable).  However, under California law, an arbitration agreement that is "permeated" or "tainted" with multiple unconscionable provisions, such that the provisions cannot be severed without reforming the contract, is unenforceable. *Armendariz*, 24 Cal. 4th at 123-25.  Courts consider whether the offending clauses are central or collateral to the purpose of the agreement, and what the resulting agreement will look like after severance. *Davis*, 485 F.3d at 1066, 1084 (severance not possible if striking provisions would "gut" agreement).

Here, the Court finds the class action waiver provision collateral to the arbitration agreement's main purpose.  The agreement is, at most, confusing and poorly worded, but one unconscionable provision does not constitute permeation or demonstrate a "systematic effort" to disadvantage Plaintiff by imposing arbitration. *Armendariz*, 24 Cal. 4th at 124.  Furthermore, the class action waiver provision is easily severable, because it is self-contained in its own section of the Arbitration Agreement.  Accordingly, the Court hereby SEVERS the class action waiver provision from the Arbitration Agreement pursuant to California Civil Code Section 1670.5(a).

## II. The Arbitration Agreement Encompasses the Dispute at Issue

The final question for the Court is whether the Arbitration Agreement covers the dispute at issue.  If there is no clear and unmistakable delegation clause stating that the issue of arbitrability should be decided in arbitration, the issue of arbitrability remains for courts to decide. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (19945); *AT&T Tech*, 475 U.S. at 650.  Courts apply ordinary state law contract principles "[w]hen deciding whether the parties agreed to arbitrate a certain matter." *First Options*, 514 U.S.

10

1    at 944.  Keeping in mind that arbitration is about contracts, a party "cannot be required to

2    submit to arbitration any dispute which he has not agreed so to submit."  *United*

3    *Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).

4          Courts grant motions to compel arbitration unless "it may be said with positive

5    assurance that the arbitration clause is not susceptible of an interpretation that covers the

6    asserted dispute."  *AT&T Tech*, 475 U.S. at 650.  Furthermore, under the Federal

7    Arbitration Act, any doubts that the court may have about the scope of arbitrable issues

8    should be resolved in favor of arbitration.  *Moses H. Cone Memorial Hosp. v. Mercury*

9    *Const. Corp.*, 460 U.S. 1, 24-25 (1983).

10         The scope language of the Arbitration Agreement at issue here is broad, stating:

> Knighted Ventures, LLC. and I hereby agree that ***any issue*** between me and Knighted Ventures, LLC. or any of its employees, ***agents***, officers, directors or affiliates ***… which relates to my employment with Knighted Ventures, LLC.***, including, but not limited to any claims of discrimination, harassment, retaliation, ***statutory claims***, tort claims or contract claims … [must be arbitrated].

16   Ex. A to Grewohl Decl. at 1 (emphasis added).  Plaintiff contends that by signing the

17   Arbitration Agreement, Plaintiff did not agree to arbitrate pre-employment statutory

18   violations with another entity.  Pl.'s Opp'n at 5.

19         First, the Court must determine whether Fortiss, as a non-signatory to the

20   Arbitration Agreement may bind Plaintiff to the Arbitration Agreement.  Plaintiff contends

21   that Fortiss is not mentioned by name in the Arbitration Agreement, and that Fortiss' role

22   was "both distinct from the role of an employer but so prominent and consistent in the

23   application process for thousands of potential litigants that if the parties contemplated

24   binding arbitration with Defendant Fortiss, then the maker of the agreement would have

25   mentioned Defendant Fortiss by name in the agreement itself."  Pl.'s Opp'n at 6, 7.

26         "Nonsignatories of arbitration agreements may be bound by the agreement under

27   ordinary contract and agency principles" *Letizia v. Prudential Bache Secs., Inc.*, 802 F.2d

28   1185, 1187-88 (9th Cir. 1986).  Such principles include: (1) incorporation by reference; (2)

11

assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (citing *Thomson-CSF, S.A. v. Am. Arbitration Assoc.*, 64 F.3d 773, 776 (2d Cir. 1995).

> **A.   Fortiss may compel arbitration because Fortiss is an agent of Knighted Ventures.**

Plaintiff relies heavily on *Cox v. ScreeningOne, Inc.*, No. 14-CV-0229, 2015 WL 413812 (N.D. Ohio Jan. 30, 2015), for the contention that Fortiss, as a third party to the Arbitration Agreement, cannot compel Plaintiff to arbitration. In *Cox*, the plaintiff sued a recruiting company for an improper background check under FCRA, and the recruiting company sought to compel arbitration under an agreement entered into between the plaintiff and his employer. *Id.* at *2. The *Cox* court refused to apply the agreement with the employer to the pre-employment conduct by the non-signatory recruiter. *Id.* at *4.

The facts of *Cox* are distinguishable from the instant case for two main reasons. First, the agreement in *Cox* did not contain language extending arbitration obligations to agents of the employer, so the *Cox* Court did not consider agency. Here, the language of the Arbitration Agreement specifically binds the employee as well as "Knighted Ventures, LLC. or any of its employees, agents, officers, directors or affiliates." Ex. A to Grewohl Decl. at 1. Second, the *Cox* plaintiff's claims against the employer were distinct from the claims against the recruiter, so it did not make sense for the recruiter – a completely unrelated third party – to reap the benefits of the agreement; here, Plaintiff asserts one claim against both Defendants jointly.

"[D]efendants who are not signatories to an arbitration agreement, but who are acting as agents for the party to the arbitration provision, may be allowed to enforce the arbitration clause." *Valley Casework, Inc. v. Comfort Constr., Inc.*, 76 Cal. App. 4th 1013, 1021 (1999). "An agent is one who represents another, called the principal, in dealings with third persons." Cal Civ. Code § 2295. An agency relationship may be created by express contract or may be "implied from the circumstances and conduct of the parties." 3 Witkin, Summary of Cal. Law (10th), Agency & Emp't § 92; *Brea v. McGlashan*, 3 Cal.

App. 2d 454, 464 (1934).

Here, the Court finds that Defendants have met their burden of showing that the relationship between Fortiss and Knighted Ventures is that of principal and agent, and thus an agreement to arbitrate exists between Plaintiff and Fortiss. Plaintiff's Complaint alleges that Fortiss "provides human resource services" to Knighted Ventures, among other entities. Compl. ¶ 19-20; Pl.'s Opp'n at 3 ("Defendant Fortiss also supplies applicants . . . to third party employers like Defendant Knighted Ventures"). Plaintiff signed both Fortiss' Release Authorization and Knighted Ventures' Arbitration Agreement as part of a "pre-hire package." Pl.'s Opp'n at 3. Plaintiff also refers to Knighted Ventures' as a "client" of Fortiss. *Id.* Finally, it would not logically make sense for Plaintiff to file suit against both Defendants for the actions (procuring a background/credit report) of only one unless the relationship was more than that of a "third party recruiter." Rather, the relationship between the Defendants appears to be such that Knighted Ventures directs Fortiss to find potential employees and perform background/credit checks; then, depending on the results of the report, Knighted Ventures decides whether to hire the applicant.

For these reasons, the Court finds that Fortiss is an agent of Knighted Ventures, and therefore may compel Plaintiff to arbitration under the Arbitration Agreement.

### B. Alternatively, Fortiss May Compel Arbitration under the Theory of Equitable Estoppel

Under the FAA, a litigant who is not a party to an arbitration agreement may invoke arbitration if the relevant state contract law allows the litigant to enforce the agreement. *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 632 (2009). California courts have held, under the theory of equitable estoppel, that parties to an arbitration agreement may not avoid arbitration by suing non-signatory defendants for claims based on the same facts and that are inherently inseparable from arbitrable claims against signatory defendants. *Metalclad Corp. v. Ventana Envir. Org. P'ship*, 109 Cal. App. 4th 1705, 1713 (2003). Thus, the focus is on the nature of the claims asserted by the plaintiff against the non-signatory defendants.

13

Defendants contend that here, Plaintiff does not allege merely interdependent claims against the two Defendants; he alleges the same claims jointly against both Defendants. Defs.' Reply at 3. Plaintiff makes no argument to the contrary. The Court finds that the claims are sufficiently intertwined between the two Defendants that they are inherently inseparable. In the Complaint, Plaintiff alleges all three causes of action against both Defendants, and does not separately identify either Defendant in any cause of action. See Compl. ¶¶ 32-49. The Factual Allegations section of the Complaint separately identifies the Defendants' roles in some paragraphs (*e.g., id.* ¶¶ 19-21), but alleges other facts jointly as to the Defendants. *E.g., id.* ¶ 22 ("Defendants commanded that Plaintiff sign an Employee Release Authorization"); ¶ 23 ("Plaintiff became aware that a background report was indeed procured by Defendants"). Such labeling further entwines the Defendants' actions.

For these reasons, the Court finds that even though Fortiss already may compel arbitration as an agent of Knighted Ventures, Fortiss alternatively may compel arbitration under the theory of equitable estoppel.

### C. The Arbitration Agreement encompasses Fortiss' pre-employment activities because the activities were related to Plaintiff's employment.

Finally, in order to determine whether the Arbitration Agreement covers the dispute at issue, the Court must decide whether pre-employment activities fall under the purview of an employment arbitration agreement. *Mitsubishi*, 473 U.S. at 626 (with arbitration agreements, "as with any other contract, the parties' intentions control"). In doing so, the Court must maintain a "healthy regard for the federal policy favoring arbitration." *Id.* (citing *Moses H. Cone*, 460 U.S. at 24-25). "The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.*

Here, Plaintiff signed the Employee Release Authorization and Arbitration Agreement with very little – if any – time in between. Plaintiff contends that the various forms were presented to him as part of a "pre-hire package." Pl.'s Opp'n at 3. Thus, the

1 Court finds that the parties' likely anticipated that the scope of the Arbitration Agreement
2 extended to all of the papers Plaintiff was given as part of the "package." Furthermore, the
3 Arbitration Agreement states that the scope extends to any issue "which relates to my
4 employment," which is very broad language. *See Cape Flattery Ltd. v. Titan Mar., LLC*,
5 647 F.3d 914, 922 (9th Cir. 2011); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir.
6 1999). It is undisputed that the background/credit check performed by Fortiss related to
7 Plaintiff's employment with Knighted Ventures; even Plaintiff concedes the point in the
8 Complaint. Compl. ¶ 33 ("[the background/credit reports] were procured for employment
9 purposes").

Keeping in mind the strong policy favoring arbitration, the Court finds that it cannot "be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech*, 475 U.S. at 650. Resolving doubts in favor of arbitration, the Court finds that the Arbitration Agreement covers disputes about a pre-employment background check performed by an agent of the employer with whom Plaintiff had a valid arbitration agreement.

### III. The Court Exercises Its Discretion to Dismiss the Action

Section 3 of the FAA requires courts to stay actions pending arbitration. 9 U.S.C. § 3. However, the Court has discretion to dismiss the action in its entirety, rather than stay the action, if all of the remaining claims asserted in the complaint must be submitted to arbitration. *Sparling v. Hoffman Constr. Co.*, 846 F.2d 635, 638 (9th Cir. 1988). Here, all of Plaintiff's remaining claims must be arbitrated, so the Court exercises its discretion and dismisses the remaining claims.

///
///
///
///

15

**CONCLUSION**

For the reasons stated above, the Court GRANTS IN PART Defendants' motion to compel arbitration. All of Plaintiff's claims against both Knighted Ventures and Fortiss shall be submitted to arbitration, but Plaintiff may proceed with arbitration on a class basis because the class action waiver is severed from the Arbitration Agreement. The Court hereby DISMISSES the action without prejudice.

**IT IS SO ORDERED.**

Dated: 02/16/16  _____
THELTON E. HENDERSON
United States District Judge